## LEVINSKI v. MIDDLESEX BANKING CO.

### (Circuit Court of Appeals, Fifth Circuit. February 7, 1899.)

### No. 735.

1. DAMAGES—REMOTENESS—BREACH OF CONTRACT TO LOAN MONEY.

Damages based on the estimated rental value of houses that were not built are not recoverable in an action for breach of a contract to loan the plaintiff money to pay for their erection, by reason of which breach he was unable to build them, though the purpose for which the loan was to be made was understood between the parties, and the defendant was to be secured on the houses when built.

2. REMOVAL OF CAUSES—AMOUNT IN CONTROVERSY—EFFECT OF SUSTAINING DEMURRER TO PORTION OF CLAIMS.

Where a petition in a state court discloses claims for damages aggregating over $2,000, and the cause is removed by the defendant into a federal court, the subsequent sustaining of exceptions to items of damages claimed, reducing the amount remaining to less than $2,000, does not affect the amount in controversy in the suit so as to deprive the court of jurisdiction, where there is no question as to the good faith with which the claims were made, and the court should retain the case for trial of the remaining issues. Parlange, District Judge, dissenting, holds that where the petition shows on its face that, as a matter of law, less than the jurisdictional amount is recoverable thereunder, as evidenced by the sustaining of the exceptions, it appears therefrom affirmatively that the "suit did not really and substantially involve a dispute or controversy properly within the jurisdiction of the court" so as to be legally removable, and the court should, on its own motion, set aside its ruling on the exceptions, and remand the case in its entirety to the state court.

In Error to the Circuit Court of the United States for the Northern District of Texas.

E. A. Jones, W. M. Sleeper, D. C. Bolinger, and Geo. Clark, for plaintiff in error.

Bennet Hill and L. M. Dabney, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and PARLANGE, District Judge.

McCORMICK, Circuit Judge. It appears from the defendant's petition for removal, marked "Filed April 5, 1897," that this case was then pending in the state district court of McLennan county, Tex., and that the plaintiff was then seeking to recover of the defendant damages in the sum of $7,600. On the same day, April 5, 1897, the state district court made its order of removal, reciting that the court having examined the petition and the bond for removal, and the petition showing on its face that the case is removable, and the bond being in the terms of the law, the same is approved by the court, and the case is ordered to be removed to the circuit court of the United States for the Northern district of Texas for further proceedings. On April 25, 1898, the plaintiff filed in the circuit court his second amended original petition, which, according to the practice in Texas, took the place of his previous pleading; so that the original petition and the first amended original petition do not appear in the transcript, and the date of their filing, respectively, and the averments in each, are not shown except by the answer of the defendant, from

which it appears that the plaintiff's action was originally brought in the state court on October 31, 1893, and that the action, as originally brought, was on a breach of contract to loan the plaintiff money, on the faith of which contract the plaintiff had purchased brick, which he was compelled to sell, on account of the defendant's breach, at a loss of $100, and that he had suffered damages for the loss of rents for the months of September and October, 1893, to the extent of $150 per month, and by reason thereof he was damaged by the defendant in the sum of $2,000; and on January 23, 1897, the plaintiff filed in the state court what purported to be his first amended original petition, in lieu of his original petition, and in the amended petition alleged the loss of $200 on the sale of the brick, and made a claim for $6,000 damages for loss of rents, and for $1,600 on account of increased cost of building houses on the premises referred to in the original petition. The second amended original petition, on which the case proceeded to trial, states the plaintiff's cause of action as follows:

"Plaintiff represents that heretofore, to wit, on or about the 9th day of June 1893, the plaintiff and the defendant entered into a contract with each other whereby, for a proper and legal consideration, the defendant undertook and agreed to loan to plaintiff the sum of $8,000, for a term beginning on the 9th day of June, 1893, and ending on the 1st day of December, 1896, when said loan was to mature, and upon which sum so loaned, or agreed to be loaned, the plaintiff agreed and contracted to pay to defendant corporation ten per cent. per annum interest thereon, payable semiannually. Plaintiff further represents that he agreed to execute to the defendant, as proper and valuable security for the payment of the sum of money so contracted to be loaned to him by the defendant corporation, a deed of trust in the nature of a mortgage upon certain parcels of land, to wit: Lots 3, 4, 5, and 15 feet adjoining lot 5, out of block 4, in farm lot 24, according to the map of said city of Waco; also lots 10 and 11, in block 4, forming lot 21 of said city,—all situated in the city of Waco, county of McLennan, and state of Texas. Plaintiff alleges that, pursuant to the contract and agreement, the plaintiff and his wife, Sarah Levinski, executed and delivered to the defendant their two certain promissory notes, dated June 9, 1893, one for the sum of $8,000, payable, as aforesaid, on the 1st day of December, 1896, and another note for $1,112.89, for the semiannual interest installments of four per cent. on the principal note, the principal note of $8,000 bearing six per cent. per annum interest; and thereafter the plaintiff and his wife did execute, acknowledge, and deliver to the defendant corporation a deed of trust in the nature of a mortgage upon the above-described property, dated the 28th of June, 1893, for the purpose of securing the aforesaid loan evidenced by the notes in accordance with the agreement, and in the form and manner required by the defendant. And plaintiff alleges that, although he performed his part of the contract as aforesaid fully and in every respect, yet, nevertheless, the defendant, after the performance aforesaid by the plaintiff of his part of the contract, wholly failed and refused, and still fails and refuses, to advance and pay over to the plaintiff the sum of money for which the notes and deed of trust were executed and delivered, although the same has frequently been demanded of the defendant by the plaintiff. Plaintiff further shows and alleges that the purpose and object in borrowing said sum of money from the defendant corporation was well understood and known by the defendant corporation at and before the time when the contract was made, and that the purpose and object was to construct and erect dwelling houses upon the real property conveyed by the plaintiff and wife to the defendant corporation as security for the loan, by means of the deed of trust, and described therein as aforesaid, which houses were to be erected by the plaintiff, with the assent of the defendant corporation, for the purpose of renting the same for profit. And the plaintiff alleges that the greater part of the sum of money so agreed to

be loaned to him by the defendant, to wit, about the sum of $5,000, was required by the defendant to be applied to the construction of the houses on said real property so as to enhance the security, and that the last-mentioned sum was only to be received by the plaintiff from the defendant as such improvements were constructed. And plaintiff alleges that the defendant required, and it was so agreed, that the plans and specifications for the houses should be submitted to, and approved by, the defendant; and that such plans and specifications were in fact submitted to, and approved by, the defendant corporation before the execution and delivery of the notes and deed of trust as aforesaid. And plaintiff alleges that, according to the plans adopted by him and approved by the defendant, the houses were to be one-story frame cottages, with front porch, vestibule, parlor, two bedrooms, rear porch, dining room, kitchen, and back porch, bathroom, and closet, as shown by copy of floor plans marked 'Exhibit A,' and filed herewith and made a part of this petition. Plaintiff alleges that, had the defendant corporation complied with its contract in the premises, he could easily have rented the premises and the dwelling houses after they had been constructed and built upon the property, as it was understood between the plaintiff and the defendant corporation that they should be built, for the sum of $30 per month each, that being the reasonable rental value of each of the houses and premises, it being the understanding and agreement between the plaintiff and the defendant corporation in the contract that the plaintiff was to erect eight dwelling houses on the lots of land; and that, had the defendant corporation complied with its contract and engagement as aforesaid, plaintiff would have received for the houses a rental of $30 per month for each, amounting in the aggregate to the sum of $240 per month; and that the interest which the sum of money should bear, according to the agreement of the parties, would amount to $66.66 per month, or about that sum. And plaintiff alleges that his profits on the rentals, which profits were contemplated and understood by the parties plaintiff and defendant at the time the contract was entered into, would have amounted, after paying all expenses and interest, to the sum of $175 per month from and after the 1st day of September, 1893, until the 1st day of November, 1896. For plaintiff shows to the court, and alleges, that at and before the time the defendant breached the contract as aforesaid it was informed by the plaintiff, and knew, that owing to the then stringency of the money market it would be impossible for the plaintiff to procure the money from any other source; that after the failure and refusal of the defendant corporation to comply with its contract in the premises the plaintiff made every effort in his power to procure the sum of money so agreed to be loaned by the defendant corporation to the plaintiff from other sources, but wholly failed, and was unable to borrow the sum of money, or any part thereof, until on or about the 14th day of August, 1896, when the plaintiff on said last-named date was enabled to procure a loan upon the property for a portion of the amount of money agreed to be loaned to plaintiff by the defendant corporation, with which money the plaintiff has erected some houses upon the property, which houses have been paying him rent, as aforesaid, at the rate of $30 per month from and after November 1, 1896. And from said 9th day of June, 1893, to said November 1, 1896, the plaintiff was, by the wrongful act of the corporation defendant and its breach of contract, deprived of rents and profits accruing from the property as contemplated by the parties, and at the rate aforesaid. Wherefore, and by reason of the premises, and the failure of the defendant corporation to pay over to the plaintiff the sum of money and to carry out its contract as it had agreed to do, the plaintiff has been damaged in the sum of $6,000, for which damages the plaintiff now sues. Plaintiff further alleges that, at the time said contract was entered into between the plaintiff and the defendant corporation, he (the plaintiff) had entered into a building contract with a contractor and builder to build and construct and complete the eight houses at and for the sum of $750 each; that since the breach of contract, by reason of increased prices of building material and labor, the plaintiff has been unable to build, construct, and complete the houses for less than the sum of $950 each, for the reason that the contractor who offered and agreed to build the houses for $750 each thereafter refused to build the houses for that sum, and the plaintiff was unable to secure the houses built for less than the sum of $950 each,

whereby the plaintiff has been further damaged in the additional sum of $1,600 by reason of the breach of contract on the part of the defendant corporation. Plaintiff further alleges that, depending upon the contract and the good faith and integrity of the defendant corporation in carrying the same into proper effect, and believing that the defendant corporation would carry out the same according to the terms of its contract and agreement, the plaintiff purchased $600 worth of brick to be used in the construction of the houses, for which brick the plaintiff was compelled to pay the then market price of $600, and thereafter, by reason of the breach of contract of the defendant corporation and the inability of the plaintiff to secure money wherewith to proceed with the construction of the houses, he was forced to sell the brick for the sum of $400, that being the reasonable market value of the brick at the time of sale, whereby, and by reason of the breach of contract, plaintiff has been further damaged in the additional sum of $200 by reason of the defendant's failure to carry out its contract as aforesaid, for which sum he here now sues."

To this petition the defendant submitted a general demurrer and four special exceptions, the first of the latter being to that part of the petition in which the plaintiff claims damages by reason of the loss of rents from the 1st of September, 1893, until the 1st of November, 1896, because the damages thus claimed are remote, contingent, speculative, and uncertain, and do not appear from the allegations to have been within the contemplation of the parties when the contract was made, and are not shown to have arisen directly out of the alleged breach of the defendant's contract. The other special exceptions are directed to that part of the petition which claims $1,600 increased cost of erecting the buildings that it was in contemplation to have erected at the time of contracting with the defendant. The defendant at the same time, but in due order of pleading, submitted the general issue and special pleas of the statute of limitation.

The cause came on for trial, and the result is shown in the following minute:

"On this the 26th day of April, 1898, the above-entitled cause coming on regularly to be heard, came the plaintiff and the defendant, by attorneys, and both announced ready for trial. And the defendant's general and special exceptions to the plaintiff's second amended original petition being presented to the court, and the court having heard the exceptions and having considered. of the pleadings, and having heard argument of counsel thereon, the court is of the opinion that the defendant's special exception No. 1, as shown in its first amended original answer, is well taken, and should be sustained, in so far as the same excepts to so much of the plaintiff's cause of action as sets forth his demand for the sum of six thousand dollars damages for rents that the plaintiff would have obtained from houses which he would have built but for the breach of the defendant's alleged contract to lend the plaintiff money, and it is therefore considered by the court that the exception be, and it is hereby, sustained; to which ruling of the court the plaintiff excepted, and prayed that his bill of exceptions should be accordingly sealed by the court. And plaintiff having in open court refused to amend his pleadings, and it appearing to the court from the face of the plaintiff's petition that, after sustaining the exception to the plaintiff's claim for damages for the sum of six thousand dollars for rents, the plaintiff's remaining cause of action is for a sum less than two thousand dollars, exclusive of interest and costs, to wit, for the sum of $1,800, and that this court has no jurisdiction thereof, and that the suit should be dismissed, it is therefore considered by the court that the suit be dismissed, and that this court take no further cognizance thereof, and that the defendant recover of the plaintiff all costs in this behalf expended, for which let execution issue; to which action of the court the plaintiff then and there excepted, and prayed that his bill of exceptions be sealed accordingly."

The first error assigned is: The circuit court erred in sustaining special exception No. 1 of defendant to the plaintiff's petition, because in the petition the plaintiff in error did not sue for the rents, as stated, but sued for damages, and the rents, being in the nature of profits contemplated by the parties in the contract, furnished a legal basis for the estimation of such damages. Counsel for the plaintiff in error contend that profits are recoverable as damages for a breach of contract when they are not remote or speculative, and it clearly appears that such profits were in contemplation of the parties, in entering into the contract, as the natural and probable result of the contract, and that rents constitute the safest basis in the estimation of such damages, because they are easily susceptible of proof.

The fundamental rule, as announced in Hadley v. Baxendale, 9 Exch. 341, is:

"Where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered, either arising naturally,—that is, according to the usual course of things, from such breach of contract itself,—or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated."

At the trial it appeared that the plaintiffs carried on an extensive business as millers at Gloucester, and that on the 11th of May their mill was stopped by a breakage in the crankshaft by which the mill was worked. The steam engine was manufactured by Messrs. Joyce & Co., engineers, at Greenwich, and it became necessary to send the shaft, as a pattern for a new one, to Greenwich. The fracture was discovered on the 12th, and on the 13th the plaintiffs sent one of their servants to the office of the defendants, who were well-known carriers, trading under the name of Pickford & Co., for the purpose of having the shaft carried to Greenwich. The plaintiffs' servant told the clerk that the mill was stopped, and that the shaft must be sent immediately; and, in answer to the inquiry when the shaft would be taken, the answer was that if it was sent up by 12 o'clock any day it would be delivered at Greenwich on the following day. On the following day the shaft was taken by the defendants before noon for the purpose of being conveyed to Greenwich, and the sum of two pounds and four shillings was paid for its carriage for the whole distance. At the same time the defendants' clerk was told that a special entry, if required, should be made to hasten its delivery. The delivery of the shaft at Greenwich was delayed by some neglect, and the consequence was that the plaintiffs did not receive the new shaft for several days after they would otherwise have done, and the working of their mill was thereby delayed, and they thereby lost the profits they would otherwise have received. After discussing the application of the fundamental principle above announced to the particular

case then at bar, the court of exchequer conclude: "The judge ought, therefore, to have told the jury that, upon the facts then before them, they ought not to take the loss of profits into consideration at all in estimating the damages."

Counsel for the plaintiff in error in their oral argument and in their printed brief cite with confident emphasis the case of Brownell v. Chapman, 84 Iowa, 504, 51 N. W. 249. The opening paragraphs of the opinion in that case are in these words:

"Lake Manawa is a small lake in the vicinity of Council Bluffs, in Pottawattamie county, and is a summer and pleasure resort. Boats are used on the lake for the accommodation of visitors, and among them was one known as the 'M. F. Rohrer,' belonging to the defendant. The boat was operated on the lake in the season of 1888, and the boilers and machinery contracted for, as known to the parties, were to refit the boat for use in the season of 1889. A breach of the contract on the part of the plaintiff, by a failure to deliver within the time, is not questioned, and the important question in this appeal is as to the proper measure of damages. The superior court admitted evidence to show and instructed the jury on the theory that the measure of damage was the rental value of the boat during the time that the defendant was deprived of its use in consequence of the breach."

The contract in this case was made April 12, 1889, and by it the contractors guarantied to deliver and set up the machinery in 30 days from April 13, 1889. There was a failure on their part to deliver for 18 days after the time specified in the contract. During these 18 days the defendant lost entirely the use of his boat. The court held that the value of such use, where it is proximate, and not speculative or uncertain, is the damage the defendant suffered. And it answered the contention that the boat in question had no established rental value, saying:

"By this it is meant that the boat had never been rented. But it will not do to say that because an article has never been rented it has no rental value, any more than it would to say that because an article has never been sold it has no market value. We should assume that an article suitable and adapted for use at a time and place has both a market and a rental value, at least until the contrary appears."

The court sustained the action of the superior court, and affirmed the judgment.

In Rogers v. Bemus, 69 Pa. St. 432, Bemus was bound by his contract with Rogers to build the foundation of a sawmill, and to furnish the money necessary to erect the mill (of which one-half should be at his own expense), all before the expiration of the year 1859, and afterwards to furnish the means to start and run the mill. Rogers, who was a carpenter, had the superstructure ready to put up in the year 1859, but Bemus did not have the foundation finished ready to receive it until the latter part of the year 1861. By the contract the parties were to be partners in running and operating the mill, and the expense of the erection, structure, and putting it up and stocking it, was to be paid first out of the earnings of the mill. On the trial Rogers offered to prove what would have been a fair rental value for the mill, and to prove the net profits the mill would have made. The trial judge sustained the objection to both these offers, and directed a verdict for nominal damages. The supreme court agreed with the trial judge that the probable net profits of an unfinished water

sawmill were too remote, contingent, and speculative to be the foundation of a verdict for damages. They add:

"But this cannot be said of the fair rental such a mill would bring. The rental of the property is entirely distinct from the business to be done upon it. The owner can always rent it for something near its yearly value, and has nothing to do with the results of the business which belongs to the tenant, who calculates his probabilities of profit or risks when he rents. The breach of the covenants of Bemus in this case exists in the delay of performance, not in an entire nonperformance. The delay, therefore, was a matter directly within his view when he declined or neglected to perform, and the direct injury in consequence of delay was the loss of the use of the mill. This might be fairly measured by the rental such a mill would bring. It is no more uncertain than the standard of damages for the use and occupation of property where the party has had the use of it. The mill here had itself to show for the thing to be used, so that an estimate of the value of its use was fairly within the range of competent evidence."

In Manufacturing Co. v. Pinch, 91 Mich. 156, 51 N. W. 930, the manufacturing company had contracted to put certain machinery in a flouring mill for Pinch, and to do the same within 10 days from the time it began the work. Pinch was compelled to keep his mill idle longer than 10 days, because of the fault of the company in not fulfilling its contract as to the time of performance. The court held that Pinch was entitled to recover as damages the value of the use of the mill while it was so kept idle by the plaintiff's fault.

In Witherbee v. Meyer, 155 N. Y. 446, 50 N. E. 58, the defendant had obligated himself to furnish sufficient water power to run and operate shafting, gearing, millstones, machines, and machinery contained in a certain gristmill. He furnished water power equal to 12 horse, when the proof showed that 35 to 38 horse power was required to run the mill in a proper and efficient manner. The court held that the measure of damages was the difference between the rental value of the mill and machinery with the power contracted for and its rental value with the power actually furnished.

The cases above set out are sufficient to illustrate the rule and its application to the case we are considering. It would be tedious and unprofitable to review the numerous other cases which counsel have cited, and concerning which we only remark that we find in them nothing that will support the claim of the plaintiff to the $6,000 damages, or any part of it, as averred in his petition. It will be observed that, in each of the above cases in which it was held that the loss of rent was the proper measure of the damage, the party against whom damages were sought had contracted to do what was directly necessary to enable the claimant to use the property, that was in existence and in the claimant's possession and control, for the use to which it was to be put, and of which both parties had full knowledge. Here the claim is made for damages to be measured by the estimated rent of houses which were not built at the time the contract to advance money was made. The defendant did not contract to build them. In another part of the petition, and as the basis of a claim for other damages, it is alleged that the plaintiff had entered into a building contract with another person to build and construct and complete the houses for the sum of $750 each. But it is not averred that this fact was made known to the defendant; and, if it

had been so made known, it is within the bounds of reasonable possibility that the contractor to build might have breached his contract. And the financial conditions that prevented the plaintiff from obtaining the money from some other source might have operated to prevent the plaintiff from obtaining cash-paying tenants for each of his houses at a rate that would have yielded, net, more than 10 per cent. per annum on the cost of the houses. It seems to us that the conditions, general or local, or both, which for the space of three years prevented the plaintiff from procuring the money from any other source, at the highest rate of conventional interest permissible by law, on the same security, which had been unimpaired by any act of the defendant, shows how intensely uncertain and speculative were the anticipated profits which the plaintiff expected to derive from the rental of the houses that he contemplated building. No one of the cases to which we have been referred, nor any case with which we are acquainted, goes to the extent of authorizing, on the breach of a contract for the loan of money, the recovery of damages to be measured by the estimated value of the rental of houses not erected at the time the contract to loan was made and breached, and which houses the party contracting to make the loan did not obligate himself to build, and none of which were built until more than three years had elapsed after the alleged breach, and conditions had so greatly changed that the plaintiff could procure a loan of the money, or some part of it, from other sources. We therefore conclude that the circuit court did not err in sustaining exception No. 1 to the part of the petition which claimed these uncertain damages.

The other error assigned is the dismissal of the plaintiff's suit. The judgment in this case recites that, after the ruling on the demurrer which we have just discussed, the plaintiff having in open court refused to amend his pleadings, and it appearing to the court from the face of plaintiff's petition that, after sustaining the exception to the plaintiff's claim for damages for the sum of $6,000 for rents, "plaintiff's remaining cause of action is for a sum less than $2,000, exclusive of interest and costs, to wit, for the sum of $1,800, and that the circuit court has no jurisdiction thereof, and that the suit should be dismissed, it is therefore considered by the court that the suit be dismissed, and that the court take no further cognizance thereof, and that the defendant recover of the plaintiff all costs in this behalf expended, for which let execution issue." Counsel for the plaintiff in error contend that the jurisdiction of the court is fixed by the amount for which the plaintiff sues, that this is the amount in controversy, and that, jurisdiction having attached, the court should have proceeded to trial. The language of the fifth section of the act of 1875 is:

"That if in any suit commenced in a circuit court, or removed from a state court to a circuit court of the United States, it shall appear to the satisfaction of the circuit court, at any time after such suit has been brought or removed thereto, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said circuit court; or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or as defendants, for the purpose of creating a case cognizable or removable under this act, the said circuit court shall proceed no

further therein, but shall dismiss the suit or remand it to the court from which it was removed, as justice may require, and shall make such order as to costs as shall be just."

We note this language in the brief of counsel for the defendant in error:

"Though we maintain that it is clear from the face of the petition that all plaintiff in error's claim, except $200, is manifestly subject to general demurrer, yet we admit that the matter in dispute, which gave jurisdiction to the circuit court below, was the whole amount sued for by plaintiff; and we do not allege or claim that his claim for damages was colorable, or not made in good faith."

Although the plaintiff's original petition and his first amended original petition, both of which were filed in the state court, do not appear in the transcript, as already stated, and for the reasons stated, there is nothing to show or to indicate that there is any substantial difference, so far as the question of jurisdiction is involved, between the first amended original petition, which constituted the plaintiff's pleadings at the time of the removal, and the second amended original petition, which constituted the plaintiff's pleadings at the time of the trial. "The circuit courts have jurisdiction where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars." Act 1888 (25 Stat. 434). This language comes down from the act of the 24th of September, 1789, where it was used in reference to the jurisdiction of the supreme court on appeal or writ of error. It was first construed in the case of Wilson v. Daniel, 3 Dall. 400. There was a diversity of opinion, but the prevailing opinion was that, to ascertain the matter in dispute, the supreme court should recur to the foundation of the original controversy, or the matter in dispute, when the action was instituted; that the descriptive words of the law point emphatically to this criterion, and, in common understanding, the thing demanded (as, in that instance, the penalty of the bond), and not the thing found, constitutes the matter in dispute between the parties. The dissenting judges filed opinions, substantially to the effect that, in their view, what was in dispute on the writ of error was the matter the sum or value of which must exceed $2,000 in order to support the jurisdiction of the supreme court. Thereafter the chief justice, on behalf of the majority, announced that it was not intended to say that on every such question of jurisdiction the demand of the plaintiff is alone to be regarded, but that the value of the thing put in demand furnished the rule. The nature of the case must certainly guide the judgment of the court, and whenever the law makes a rule that rule must be pursued; saying, for illustration, in an action in debt on a bond for £100, the principal and interest are put in demand, and the plaintiff can recover no more, though he may lay his damages at £10,000. The form of the action, therefore, gives in that case the legal rule. In the case of Gordon v. Ogden, 3 Pet. 32, Chief Justice Marshall says:

"The jurisdiction of the court has been supposed to depend on the sum or matter in dispute in this court, not on that which was in dispute in the circuit court. If the writ of error be brought by the plaintiff below, then the sum which his declaration shows to be due may still be recovered, should the judgment for a smaller sum be reversed, and consequently the whole sum

claimed is still in dispute. But, if the writ of error be brought by the defendant in the original action, the judgment of this court can only affirm that of the circuit court, and consequently the matter in dispute cannot exceed the amount of that judgment. Nothing but that judgment is in dispute between the parties. The counsel for the plaintiff in error relies on the case of Wilson v. Daniel, supra. That case, it is admitted, is in point. It turns on the principle that the jurisdiction of this court depends on the sum which was in dispute before the judgment was rendered in the circuit court. Although that case was decided by a divided court, and although we think that, upon the true construction of the twenty-second section of the judiciary act, the jurisdiction of the court depends upon the sum in dispute between the parties, as the case stands upon the writ of error we should be much inclined to adhere to the decision in Wilson v. Daniel, had not a contrary practice since prevailed. In Cooke v. Woodrow, 5 Cranch, 13, this court said, 'If the judgment below be for the plaintiff, that judgment ascertains the value of the matter in dispute.' This, however, was said in a case in which the defendant below was plaintiff in error, and in which the judgment was a sufficient sum to give jurisdiction. The case of Wise v. Turnpike Co., 7 Cranch, 276, was dismissed because the sum for which judgment was rendered in the circuit court was not sufficient to give jurisdiction, although the claim before the commissioners of the road, which was the cause of action and the matter in dispute in the circuit court, was sufficient. The reporter, adds that all the judges were present. Since this decision, we do not recollect that the question has been ever made. The silent practice of the court has conformed to it. The reason of the limitation is that the expense of litigation in this court ought not to be incurred unless the matter in dispute exceeds two thousand dollars. This reason applies only to the matter in dispute between the parties in this court."

In the case of Smith v. Greenhow, 109 U. S. 669, 3 Sup. Ct. 421, the value of the property taken is stated in the declaration to be $100, while the damages for the alleged trespass were laid at $6,000. No circumstances of malice or of special damage were averred. The circuit court remanded the case on the ground that the matter in dispute did not exceed the sum or value of $500. The judgment of the circuit court remanding the case was reversed by the supreme court. That court said:

"We cannot, of course, assume, as a matter of law, that the amount laid, or a less amount, greater than $500, is not recoverable upon the case stated in the declaration. * * * But if the circuit court had found, as matter of fact, that the amount of damages stated in the declaration was colorable, and had been laid beyond the amount of a reasonable expectation of recovery, for the purpose of creating a case removable under the act of congress, so that, in the words of the fifth section of the act of 1875, it appeared that the suit 'did not really and substantially involve a dispute or controversy properly within the jurisdiction of said circuit court,' the order remanding it to the state court could have been sustained."

In Barry v. Edmunds, 116 U. S. 550, 6 Sup. Ct. 501, this subject is thoroughly discussed, and we note the following:

"The amount of damages laid in the declaration, however, in cases where the law gives no rule, is not conclusive upon the question of jurisdiction; but if, upon the case stated, there could legally be a recovery for the amount necessary to the jurisdiction, and that amount is claimed, it would be necessary, in order to defeat the jurisdiction, since the passage of the act of March 3, 1875, for the court to find, as matter of fact, upon evidence legally sufficient, 'that the amount of damages stated in the declaration was colorable, and had been laid beyond the amount of a reasonable expectation of recovery, for the purpose of creating a case' within the jurisdiction of the court. Then it would appear to the satisfaction of the court that the suit 'did not really and substantially involve a dispute or controversy properly within the juris-

diction of said circuit court.' * * * Cases, as we have already seen, may exist, where a rule of law, as in certain cases ex contractu, in which the amount recoverable is liquidated by the terms of the agreement, fixes the limit of a possible recovery. Such was the case of Lee v. Watson, 1 Wall. 337, where it appeared 'that in the progress of the cause an amendment was made in the amount of damages claimed, for the purpose of bringing the case within the appellate jurisdiction of this court.' As was said in Hilton v. Dickinson, 108 U. S. 165, 2 Sup. Ct. 424, 'it is undoubtedly true that, until it is in some way shown by the record that the sum demanded is not the matter in dispute, that sum will govern in all questions of jurisdiction; but it is equally true that, when it is shown that the sum demanded is not the real matter in dispute, the sum shown, and not the sum demanded, will prevail.' "

Before the act of 1875 was passed, it had been held that the circuit courts could not of their own motion take notice of colorable assignments or transfers to create cases for the jurisdiction of the courts of the United States, and that in the absence of a plea in abatement or to the jurisdiction, under which the proof could be admitted, such proof could not be received or heard. Subject to the limitations named in the act, that statute (1875) authorized either party to a suit in a state court to remove the same to the circuit court, and was considered and construed by the supreme court to open wide the door for fraud upon the jurisdiction of the court by collusive transfers, so as to make colorable parties, and create cases cognizable by the courts of the United States, and was held in Williams v. Nottawa, 104 U. S. 209, to have changed the rule which had theretofore obtained, so far as to allow the court at any time, without plea and without motion, to stop all further proceedings and dismiss the suit the moment a fraud on its jurisdiction was discovered.

In Hartog v. Memory, 116 U. S. 588, 6 Sup. Ct. 521, this language occurs:

"If, from any source, the court is led to suspect that its jurisdiction has been imposed upon by the collusion of the parties, or in any other way, it may at once, of its own motion, cause the necessary inquiry to be made, either by having the proper issue joined and tried, or by some other appropriate form of proceeding, and act as justice may require for its own protection against fraud or imposition."

In Schunk v. Moline, Milburn & Stoddart Co., 147 U. S. 500, 13 Sup. Ct. 416, the plaintiff sued in the circuit court on several notes, amounting in the aggregate to over $2,000, of which $1,664.04 was not then due. The suit was by attachment, which it was claimed that the local statute authorized to be brought on a debt not yet due. The circuit court sustained its jurisdiction, and its judgment was affirmed by the supreme court. In the opinion announcing the decision of the supreme court we note this language:

"Suppose there were no statute in Nebraska like that referred to, and the plaintiff filed a petition exactly like the one before us, excepting that no attachment was asked for, and the right to recover anything was challenged by demurrer; would not the matter in dispute be the amount claimed in the petition? Although there might be a perfect defense to the suit for at least the amount not yet due, yet the fact of a defense, and a good defense, too, would not affect the question as to what was the amount in dispute. Suppose an action were brought on a nonnegotiable note for $2,500, the consideration for which was fully stated in the petition, and which was a sale of lottery tickets, or any other matter distinctly prohibited by statute; can there

be a doubt that the circuit court would have jurisdiction? There would be presented a claim to recover the $2,500, and, whether that claim was sustainable or not, that would be the real sum in dispute. In short, the fact of a valid defense to a cause of action, although apparent on the face of the petition, does not diminish the amount that is claimed, nor determine what is the matter in dispute; for who can say in advance that that defense will be presented ·by the defendant, or, if presented, sustained by the court? We do not mean that a claim evidently fictitious, and alleged simply to create a jurisdictional amount, is sufficient to give jurisdiction."

In Vance v. W. A. Vandercook Co., 170 U. S. 469, 18 Sup. Ct. 650, the action was for the recovery of personal property, and for damages for its detention. The value of the personal property was alleged to be, and shown to be, $1,000. The circuit court found damages for detention, also, in the sum of $1,000. In that case the supreme court, speaking in an opinion by Mr. Justice White, say:

"The courts of South Carolina, as we have seen, have held that in an action of trover consequential damages are not recoverable, and have also held that in the action of claim and delivery damages for the detention must have respect to the property, and to a direct injury arising from the detention. Destruction of business not being of the latter character, it follows that the special damages averred in the complaint were not recoverable. It results that as the plaintiff's action was solely one for claim and delivery of property alleged to have been unlawfully detained, and for damages for the detention thereof, the amount of recovery depended first upon the alleged · value of the property, which in the present case was one thousand dollars, and such damages as it was by operation of law allowed to recover in the action in question. As, however, by way of damages in an action of this character, recovery was only allowable for the actual damage caused by the detention, and could not embrace a cause of damage·which was not in' legal contemplation the proximate result of the wrongful detention, and such recovery was confined, as we have seen, to interest on the value of the property, it results that there was nothing in the damages alleged in the petition, and properly recoverable, adequate, when added to the value of the property, to have ·conferred upon the court jurisdiction to have entertained a consideration of the suit."

In Texas, where this case arose, distinctions in forms of action do not obtain. The method of pleading is by petition and answer, and each suit is an action on the case. The state court, in which this suit was brought, has jurisdiction of controversies in which the matter in dispute amounts in value to $500. The plaintiff claimed $7,800, all grounded on an alleged breach of contract on the part of the defendant. The defendant is a citizen of the state of Connecticut; and, if the matter in dispute exceeds the value of $2,000, the defendant had a right, upon making application in proper time, and in the proper manner, as it did, to have the case removed to the circuit court. However confident the defendant may have been that the plaintiff's petition was subject to general demurrer or to special demurrer, it could not, and its counsel could not, tell in advance what would be the ruling of the court on defenses of this character. It had the right to have all issues of law, equally with issues of fact, submitted to the circuit court·for trial. It had the right to have its demurrers ruled on by the circuit court, to the same extent that it had the right to have that court pass upon its objections to the introduction of proof offered. The defenses that appear on the face of the plaintiff's pleadings are properly interposed by demurrer. The cir-

cuit court recognized the right of the defendant to remove this case for the purpose of submitting and having tried demurrers to the plaintiff's pleading. It took jurisdiction, and heard the parties in their dispute on the questions of law presented by the demurrers. The record affirmatively shows that it sustained the special demurrer No. 1. The record shows, by implication, that the general demurrer and the other special demurrers were not sustained. The order sustaining the special demurrer No. 1 was not such a final judgment in the case that the party aggrieved thereby could sue out a writ of error and have the ruling of the trial court reviewed. If the circuit court had jurisdiction to make the ruling on the demurrer, it could only be by reason of its having jurisdiction of the case; and, as the demurrer sustained did not go to the whole case, the ruling thereon was, from its very nature, an interlocutory order. The plaintiff had the same right to stand on his pleadings that he would have had if all the demurrers or the general demurrer had been sustained. His pleading may have been as good as his case permitted. But, whether it was or was not, he had the right to act on his own opinion of its sufficiency, and the right to have the adverse ruling thereon reviewed and tested by the appellate court. If the demurrer sustained had gone to the whole case, and the plaintiff had declined to amend, his case would have been dismissed, not because the court was without jurisdiction to try it, but because the court had jurisdiction, and had tried it fully, and rendered judgment against him, to review which he could sue out a writ of error. The reason for not granting the right to appeal or to take a writ of error from an interlocutory order is the tax that the exercise of such a right would impose on the tribunals and the parties litigant. The interest of such parties and of the public requires that the whole case should be tried to final judgment. To hold that the circuit court had jurisdiction to act on the demurrer, and that, having exercised that jurisdiction to the extent of sustaining the demurrer to a part of the plaintiff's case, it thereby lost jurisdiction to proceed further and try the whole case, it seems to us, is equivalent to holding that the court may by its ruling on one issue in a case deprive itself of jurisdiction to pass upon the other issues. Of course, the ruling on the one issue may be such that the other issues become immaterial or ineffective. This, however, is to be judged of by the court in the exercise of its jurisdiction. It seems clear to us that where there is no cause to suspect that the action is colorable, or brought or prosecuted with the purpose and effect of perpetrating a fraud upon the jurisdiction of the court, and the amount in good faith claimed is within the jurisdiction, the trial court should not remand or dismiss the case, unless, from the nature of the action, it is apparent that the plaintiff cannot recover an amount within the jurisdiction of the court. It having appeared to the circuit court that the plaintiff's pleadings not subject to demurrer showed matter in dispute of the value of $1,800, the plaintiff having brought his suit in the state court, which had jurisdiction of amounts exceeding $500, and the case having been removed to the circuit court by the defendant, without any collusion with the plaintiff, and without any consent upon his part, further than his ready submission to and recognition of its

right to remove, it seems too clear for argument that the circuit court should not have dismissed his case, but should either have tried it, or have remanded it to the state court for trial. As the law now is, a judgment of the circuit court remanding a case cannot be reviewed on a writ of error to that court. If, after ruling on the demurrer, the circuit court had remanded this case, in what condition would it have returned to the state court? The ruling on the demurrer did not change the plaintiff's pleadings. It only construed the legal effect of the pleading to be that the plaintiff did not show a cause of action for an amount in value exceeding $2,000, and that, therefore, the circuit court could not acquire or exercise jurisdiction of the case, further than to make the order to remand. The case would therefore return to the state court in the same condition that it was when the order of removal was made. The state court would not—no court could—recognize rulings made by another court which had no jurisdiction of the case in which the rulings were made. The defendant in error would be denied its right to have the questions presented by the demurrers tried by the circuit court, and its position would be no better, if, after our taking jurisdiction of this writ of error, and sustaining the action of the circuit court in its rulings on the demurrers, and reversing the judgment of that court dismissing the case, we should now remand the cause to the circuit court with the direction to that court to remand the cause to the state court. It is therefore ordered that the judgment of the circuit court is reversed, and the cause is remanded to that court, with direction to reinstate the action, and to otherwise proceed therein in conformity with the views herein expressed, and according to law.

PARLANGE, District Judge (dissenting). The plaintiff below alleged that the Middlesex Banking Company bound itself to advance him $8,000, and knew that he intended, with the larger part of the money, to build certain houses. He alleged that the Middlesex Banking Company failed and refused to comply with its obligation to furnish the money, the result being that the plaintiff below was unable to build the houses. He claimed damages to the amount of $7,800, consisting of the following items: Loss of rent which plaintiff below claimed he would have received if he had not been prevented from building the houses, $6,000; increase of the cost of building the houses caused by delay in obtaining money, $1,600; loss on the sale of bricks, which, on account of the failure of the Middlesex Banking Company to furnish the money, the plaintiff below was compelled to sell at a sacrifice, $200. The defendant below having filed a general demurrer and also four special exceptions, the first of which was to the claim for speculative rents, amounting as stated to $6,000, the trial court sustained said first special exception. The remaining claim in the suit (increase in cost of building and loss on bricks) amounted only to $1,800. Upon the refusal of the plaintiff below to amend his pleadings, the trial court dismissed the suit on the ground that, the amount then involved being less than $2,000, the court had no jurisdiction.

I agree fully with this court that the claim for speculative rentals could not, as matter of law, be sustained. I also agree with this court that it was error to dismiss the suit as to the remaining claims, aggregating $1,800. But it is clear to me that the cause in its entirety should have been remanded to the state court, and I am constrained to dissent from the proposition that the circuit court should have proceeded with the suit and tried the remaining claims. In my opinion, it is apparent upon the face of the pleadings, as matter of law, that the circuit court had no jurisdiction, because of the insufficiency of the amount involved. It is elementary, of course, that in the federal courts the jurisdiction must appear plainly and affirmatively on the face of the pleadings. I need not cite authorities to show the particularity which is required of pleaders in this respect. But the case at bar is not one in which the jurisdiction is merely nonapparent. This court being unanimous in the opinion that the claim for speculative rentals was not recoverable as matter of law, it follows that the petition shows upon its face that the trial court had no jurisdiction.

In the case of Vance v. W. A. Vandercook Co., 170 U. S. 468, 18 Sup. Ct. 645, the supreme court has said:

"In determining from the face of a pleading whether the amount really in dispute is sufficient to confer jurisdiction upon a court of the United States, it is settled that if, from the nature of the case as stated in the pleadings, there could not legally be a judgment for an amount necessary to the jurisdiction, jurisdiction cannot attach, even though the damages be laid in the declaration at a larger sum."

In that case the demand was for $1,000, alleged to be the value of certain property taken from the complainant, and in addition for $10,000 damages. The supreme court, after a full examination of the law and authorities bearing on the point, having reached the conclusion that the claim for damages could not be sustained as a matter of law, held that, upon the face of the pleadings, the circuit court had no jurisdiction, because, after striking out the claim for damages, the remaining claim did not exceed $2,000. The supreme court further said:

"The courts of South Carolina, as we have seen, have held that in the action of trover consequential damages are not recoverable, and have also held that in the action of claim and delivery damages for the detention must have respect to the property, and to a direct injury arising from the detention. Destruction of business not being of the latter character, it follows that the special damages averred in the complaint were not recoverable. It results that as the plaintiff's action was solely one for claim and delivery of property alleged to have been unlawfully detained, and for damages for the detention thereof, the amount of recovery depended first upon the alleged value of the property, which in the present case was one thousand dollars, and such damages as it was by operation of law allowed to recover in the action in question. As, however, by way of damages in an action of this character, recovery was only allowable for the actual damages caused by the detention, and could not embrace a cause of damage which was not, in legal contemplation, the proximate result of the wrongful detention, and such recovery was confined, as we have seen, to interest on the value of the property, it results that there was nothing in the damages alleged in the petition, and properly recoverable, adequate, when added to the value of the property, to have conferred upon the court jurisdiction to have entertained a consideration of the suit. Upon the face of the complaint, therefore, the circuit

court was without jurisdiction over the action, and it erred in deciding to the contrary."

I am unable to differentiate the case at bar from the case of Vance v. W. A. Vandercook Co., just referred to. Both cases involve claims for damages the recovery of which is impossible as matter of law. In the early case of Wilson v. Daniel, 3 Dall. 407, Chief Justice Ellsworth, dealing with the question of the amount in dispute necessary to confer jurisdiction, summarized the matter thus:

"The proposition, then, is simply this: Where the law gives no rule, the demand of the plaintiff must furnish one; but, where the law gives the rule, the legal cause of action, and not the plaintiff's demand, must be regarded."

Chief Justice Ellsworth also said in that case that if, in an action of debt on a bond for £100, the principal and interest are put in demand, the plaintiff can recover no more, though he may lay his damages at £10,000. He further said that the form of action gives in that case the legal rule, but that in an action of trespass or assault and battery, where the law prescribes no limitation as to the amount to be recovered, and the plaintiff has a right to estimate his damages at any sum, the damage stated in the declaration is the thing put in demand, and presents the only criterion to which, from the nature of the action, resort can be had in settling the question of jurisdiction.

With all due respect for the opinion of my learned brothers, I cannot comprehend how the jurisdiction can be sustained in the case at bar, either under the language quoted from Vance v. W. A. Vandercook Co., or from the proposition stated by Chief Justice Ellsworth. It is plain that, as a matter of law,—on which point this court is unanimous,—the complaint itself manifestly shows that there could not legally be a judgment for an amount necessary to the jurisdiction. It is also plain to me that in the case at bar the law, as declared by this court, furnishes the rule which strikes out the speculative rentals from the aggregate amount of damages claimed. The case of Barry v. Edmunds, 116 U. S. 550, 6 Sup. Ct. 501, does not, in my opinion, sustain the jurisdiction in the case at bar. On the contrary, it draws a clear distinction, as does Wilson v. Daniel, supra, between those cases in which, ex necessitate, the plaintiff's statement of the amount of his claim must be accepted for the purpose of jurisdiction, and the other class of cases, in which the amount stated is not determinative of jurisdiction. Barry v. Edmunds was an action of trespass on the case, in which certain damages were claimed. Substantially, the trial judge dismissed the cause for the reason that, in his individual judgment, the plaintiffs could not recover damages in a sum as large as the jurisdictional amount. The supreme court, with evident correctness, said that the amount of recovery in such a case was for the jury, and not for the judge. But in that case the supreme court was careful to say that:

"In some cases it might appear, as matter of law, from the nature of the case as stated in the pleadings, that there could not legally be a judgment recovered for an amount necessary to the jurisdiction, notwithstanding the damages were laid in the declaration at a larger sum."

The case of Wilson v. Daniel, supra, was cited and affirmed.

In my opinion, there is nothing deducible from Schunk v. Moline, Milburn & Stoddart Co., 147 U. S. 500, 13 Sup. Ct. 416, which would support the jurisdiction in the case at bar. The substance of the opinion in that case is that even if, from the plaintiff's own pleadings, it appears that his action is barred by limitation, or even if, from those pleadings, a perfect defense to the suit should appear, the court would still have jurisdiction, if the amount claimed is sufficient. This is evidently clear and sound doctrine, but it does not, in my opinion, apply in any manner to the case at bar. It is perfectly true that a trial judge, in determining the real amount involved, cannot supply a plea of limitation, or speculate whether defenses, even though clearly apparent, will be made. But the case at bar is not one in which a defense appears from the plaintiff's pleadings, within the doctrine of Schunk v. Moline, Milburn & Stoddart Co., supra. A valid and substantial right may not entitle its owner to a recovery, if at the trial it should develop that, by reason of something which took place after the right originated, the right had become extinguished or otherwise nonenforceable. A debt which is valid and binding when contracted may become extinguished by payment or other cause. Still, the right or the debt had a valid existence at some time; and an adjudication concerning it may be claimed from a court, even though upon the trial it may be ascertained that the cause of action is extinguished, or its scope has been diminished. But in the case at bar, in the unanimous opinion of this court, there never was a time when any cause of action for the speculative rentals existed, and a judgment for their recovery is, and has always been, a legal impossibility.

Smith v. Greenhow, 109 U. S. 669, 3 Sup. Ct. 421, was an action in trespass vi et armis, in which personal property worth $100, and damages in the sum of $6,000, were claimed. The main question decided was that a federal question was involved, which supported a removal of the case to the federal court. At the close of the opinion the court said:

"There is a ground of remanding the cause suggested by the record, but not sufficiently apparent to justify us in resorting to it to support the action of the circuit court. The value of the property taken is stated in the declaration to be but $100, although the damages are laid at $6,000. The petition for removal does not allege the sum or value of the matter in dispute, otherwise than by the statement of the amount of the claim for damages. *We cannot, of course, assume, as a matter of law* [italics mine], that the amount laid, or a less amount, greater than $500, is not recoverable upon the case stated in the declaration."

In my opinion, Smith v. Greenhow, far from supporting the jurisdiction in the case at bar, is an authority against sustaining the jurisdiction, and is in accord with Vance v. W. A. Vandercook Co., supra. See, also, Gorman v. Havird, 141 U. S. 206, 11 Sup. Ct. 943.

I am well aware that there are several cases in which courts, having come to the conclusion that litigants had fraudulently or intentionally inflated the amount of their claims in attempts to have the courts take jurisdiction, denied the jurisdiction and dismissed the suits. The dominant idea in this line of cases is that parties will not be allowed to commit a fraud upon the jurisdiction. But there is another and

distinct class of cases in which the jurisdiction is denied, not because of any fraud attempted to be committed upon the jurisdiction, but because the case, as stated by the plaintiff himself, as strongly as he can and as favorably to himself as possible, discloses, without the necessity of any evidence being heard, and without any regard to the opinion of the judge as to what would be a reasonable recovery in the cause, but simply as a pure matter of law, a case which under none of its aspects could support a judgment for the jurisdictional amount. Such was Vance v. W. A. Vandercook Co., supra, in which there was not even an intimation that the plaintiff in the suit was in bad faith. In fact, the conclusion may readily be reached that he was in perfect good faith.    He obtained a judgment from the learned trial judge. But the litigant was conclusively presumed to know the law, and his error of law, however honest it might be, could not confer jurisdiction. The case at bar, in my opinion, comes under the doctrine of Vance v. W. A. Vandercook Co., supra.

As to the action of the trial judge in passing upon the question of jurisdiction, and acting thereon, on his own motion, I am clear that it was not only his right, but his duty, to do so.    Hartog v. Memory, 116 U. S. 588, 6 Sup. Ct. 521, and Morris v. Gilmer, 129 U. S. 315, 9 Sup. Ct. 289, make it plain, in my opinion, that under section 5 of the act of March 3, 1875, the trial judge could and should have acted on his own motion, and remanded the whole cause to the state court. Upon ascertaining that the suit "did not really and substantially involve a dispute or controversy properly within the jurisdiction" of the court, he should have set aside his action on the special exception, and remanded the case, in its entirety, to the state court.    In this connection, see Wetmore v. Rymer, 169 U. S. 115, 18 Sup. Ct. 293, which was a case originating in the federal court, and in which, after verdict and judgment, the trial judge set aside the verdict and judgment, and passed, without a jury, on the question of the jurisdictional amount involved, which in that case was a question of fact, and dismissed the case for want of jurisdiction.    While it is true that on writ of error the supreme court reversed the action of the trial judge, that court did so for the reason that it came to a different conclusion on the facts from that which the trial judge had reached.    I am unable to see how the fact that this was a cause which originated in a state court, and was removed to the federal court, can affect the question under discussion.    If this cause had originated in the federal court, it should, if my views are correct, have been dismissed for want of jurisdiction, either on the application of the defendant, or mero motu by the judge.    I do not see how the jurisdiction can be assisted by the fact that the cause was removed from the state court.    The fifth section of the act of 1875 applies, in terms, to "any suit commenced in a circuit court or removed from a state court to a circuit court."    I note what is said in Black's Dillon on Removal of Causes (Ed. 1898, § 47) as to the strictness with which the statute providing for removals from the state courts must be construed on the question of the jurisdictional amount.    I also note that it has been held that when a cause is removed to a federal court, if at any time after the removal a substantial doubt arises as to the jurisdiction of the federal

court, the cause should be remanded. Fitzgerald v. Railway Co., 45 Fed. 812–820; Hutcheson v. Bigbee, 56 Fed. 329; Coal Co. v. Haley, 76 Fed. 882; In re Foley, 76 Fed. 390–392; Kessinger v. Vannatta, 27 Fed. 890; also, Mining Co. v. Largey, 49 Fed. 291. In Black, Dill. Rem. Causes, § 216, it is said that:

"Notwithstanding an order made by the state court allowing the removal, the federal court must determine for itself the question of jurisdiction, and send back the cases, unless it clearly appears that the defendant is entitled to the removal."

To my mind, the matter is summarized in this question: Can a litigant create jurisdiction in a federal court, as regards the jurisdictional amount, by setting out in his complaint a demand for damages, the nonexistence of which, in law, he is conclusively presumed to know, and for which a legal recovery is an impossibility? It is clear to me that there can be but one answer to the question, and that in the negative.